# Appeal of Hacke & Hugus.

1. Nuisances to rights of way form one of the classes of cases in which the equitable remedy of injunction may be sought. If the right is clear and not doubtful, it need not first be established by a suit at law, nor is it necessary that the owner should prove special damage to entitle him to a decree.

2. A., the lessee of a dominant tenement, by agreement, released to B., the owner of the servient tenement, to the extent of A.'s interest in the premises, his right, title and interest to the free and common use of a certain alleyway; B. covenanting that "at the expiration of the said lease, the said alley is to be opened by the said B., his heirs and assigns." After the execution of this agreement A. procured an extension of his lease "subject to all the conditions and covenants therein contained." Upon the expiration of his original term A., the lessee of the dominant tenement, brought a bill for an injunction to prevent the further obstruction of the alleyway. *Held*, that the agreement for the release of the right of way had reference only to the then existing lease and terminated with it. *Held further*, that an action at law was not necessary to determine A.'s right to the easement.

| | |
|---|---|
| 101 | 245¹ |
| 190 | 174¹ |

| | |
|---|---|
| 101 | 245 |
| 208 | 296 |
| 25 SC | ¹194 |
| 101 | 245¹ |
| 212 | ¹ 39 |
| 28 SC | ¹361 |

| | |
|---|---|
| 101 | 245 |
| 213 | ¹181 |
| 213 | ¹182 |

| | |
|---|---|
| 101 | 245 |
| ƒ219 | ¹625 |

| | |
|---|---|
| 101 | 245 |
| 39SC¹ | 64 |

October 9th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from a decree of the Court of Common Pleas No. 1 of *Allegheny county :* In equity : Of October Term 1882, No. 6.

This was a bill in equity by J. G. Lauer and C. F. Lauer, doing business as J. G. Lauer & Brother, against Paul H. Hacke and Daniel Hugus, praying for a decree enjoining and directing defendants to remove all obstructions from a certain alley way to the free and common use of which the complainants were entitled, and to ascertain and order the payment of the loss and damage suffered by the complainants by reason of said obstruction.

The facts of the case appeared from the report of the examiner and Master, H. B. Herron, Esq., to be as follows :

1. That plaintiffs under a lease covering the ten years from April 1st 1869, to April 1st 1879, were, as tenants of Thomas Brown, the occupants of the premises at No. 106 Market street, Pittsburgh, and as such were entitled to the free and common use of an alley four feet wide and ten feet high across the rear end of defendant's lots as set forth in plaintiffs' bill.

2. That prior to April 18th 1872, P. H. Hacke, one of the defendants, took possession of, built over, obstructed, and wholly closed up the alley then existing across the said lots.

3. That upon the 18th day of April, 1872, plaintiffs and said Paul H. Hacke, who was then the owner and sole occupant of the lots over which ran this alley, entered into the agreement with plaintiffs, shown by exhibit "A," a copy of which is attached to plaintiffs' bill, whereby plaintiffs' " to the extent of their interest in the premises released unto said Hacke all their right title and interest to the alley in the rear of said Hacke's lot and agreed to allow the said Hacke to close up the same during the continuance of said J. G. Lauer & Bro.'s lease."

4. That subsequently to said 18th April, 1872, plaintiffs brought suit against said Paul H. Hacke for the damages sustained by the obstruction of said alley until the date of said agreement, and recovered judgment against him therefor, in the sum of $100.

5. That plaintiffs, after the execution of said agreement, obtained from said Brown a new lease of the premises at said 106 Market Street, or a renewal of their former lease, for three years, from April 1st 1879, and under said new lease are now tenants of said property with its appurtenances.

6. That a short time prior to April 1st 1879, plaintiffs notified defendants (said Hugus having in the meantime become associated in business with Paul H. Hacke, and thus a co-occu-

pant of said premises,) to remove said obstructions and open said alley.

7. That defendants refused to remove said obstructions or open said alley, and assert a right to keep it closed as long as plaintiffs remain tenants of said property.

Upon the questions of law involved the master reported as follows:

The only question or matter in dispute is, did the agreement between plaintiffs and Paul H. Hacke, of April 18th 1872, terminate April 1st 1879, or does it still continue in force? The plaintiffs contend that it terminated April 1st 1879, the defendants that it continues in force as long as plaintiffs may continue to occupy the premises leased from Brown.

The agreement referred to was prepared by an able, careful attorney, and doubtless expresses the contract as made and understood between the parties thereto. There is no allegation of fraud, accident or mistake; and parol evidence is therefore inadmissible to alter or vary the written agreement: Martin v. Berens, 27 P. F. S. 459. There is no satisfactory evidence that the agreement was signed by Mr. Hacke, on the faith of any promise on the part of J. G. Lauer & Bro. that the right to the use of said alley should continue during the period, they, Lauer & Bro., might occupy the Brown premises.

The expression " allow Hacke to close up the same during the continuance of said J. G. Lauer & Bro.'s lease," upon which so much stress is laid by defendants' attorney, can only refer to the then existing lease. If as contended it was meant to apply to any future lease or extension of lease, words expressing such an agreement would doubtless have been used. There is no evidence that the defendants knew that plaintiffs contemplated procuring an extension of their lease. Applying the ordinary and safe rule for construing a written agreement the expression above quoted must be taken to apply to the then existing lease under which Lauer & Bro. held the premises mentioned. The possession of the alley way by the defendant from April 1872 to April 1879 was proper and right. The verdict of the jury established beyond question that the defendants have no right to the use of the alley other than that granted by the plaintiffs.

Evidence was offered to show that the alleyway is of no value to plaintiffs' premises, but this can make no difference, the question being simply one of right and not of the value of that right. The plaintiffs offered no evidence showing substantial damages to them, and therefore any evidence upon this branch of the case by defendants is wholly irrelevant. That plaintiffs have failed to prove damages, can make no difference as to their right to restrain others from trespassing upon their premises ; any doctrine contrary to this would be productive of

great mischief. We are not without authority on this point:
Casebeer *v.* Mowry, 5 P. F. S. 419.

The Master therefore reported a decree that the defendants
" be enjoined and directed to remove all the obstructions com-
plained of in plaintiffs' bill from the alleyway described therein,
so as to afford and allow plaintiffs the free and common use of
said alley way."

Exceptions filed to the Master's report by the defendants
were dismissed by the court, and the decree was entered as
recommended by the master, together with the costs of suit.
(No opinion filed.) Defendants thereupon took this appeal
assigning for error the action of the court in entering the decree
as prayed for and in not dismissing plaintiffs' bill.

*D. T. Watson* (with him *Wm. L. Chalfant*), for appel-
lants.—Under the written contract between Lauer & Bro.,
the plaintiffs below, and Mr. Hacke, appellant, dated April 18th
1872, the former " to the extent of their right and interest,"
give their free consent to the latter to erect the party wall, thus
necessarily obstructing and preventing the use by Lauer & Bro.
of this alley, and they thereby released Hacke from " all claims
which they might or could have " by reason thereof. To pre-
vent the possibility of any doubt about this covering the alley,
it was expressly stipulated in the same agreement that Lauer &
Bro. " to the extent of their interest in the premises, release
unto said Hacke all their right, title and interest to the alley in
the rear of Hacke's lot and agree to allow Hacke to close up the
same during the continuance of said J. G. Lauer's lease." The
term was extended, but the lease remained the same. The
interest of the lessees was not merely until April 1879, but was
under the very terms of the lease for any further period they
should occupy the premises. The additional term was not a
new demise but a continuation of the old : Wood's Landlord
& Tenant 678. Equity has no jurisdiction in this case, as
damages will compensate the loss suffered from the nuisance :
Grey *v.* Ohio & Penn. R. R., 1 Grant 412 ; Richards' Appeal,
7 P. F. S. 113. The right of the complainant being disputed,
equity will not interfere until he has established his claim in an
action at law : Rhea *v.* Forsyth, 1 Wright 503.

*McClung* (with him *Robb*), for appellees, relied on the report
of the Master.

Mr. Justice TRUNKEY delivered the opinion of the court,
October 25th 1882.

That Thomas Brown is the owner of lot No. 106 Market
street, with the free and common use of an alley four feet wide

and ten feet high, is admitted. His title is by deed. He leased the premises to Lauer & Bro., for the term of ten years, from the 1st April 1869. They, by agreement, released unto Hacke all their right to the said alley and allowed him to close up the same during the continuance of said lease; and Hacke covenanted that, "at the expiration of said Lauer's lease, the said alley is to be opened by said Hacke, his heirs or assigns."

The appellants claim no right to keep the alley closed except as granted in said agreement. Lauer & Bro. had an interest, a title, at the time of making that grant, which would end on April 1st 1879, nothing more; and Hacke bound himself to open the alley when that title expired. There is no condition in their contract that if Lauer and Bro. should hold over, or acquire another term, that Hacke's performance of his covenant should be postponed.

After the making of said agreement, Brown gave Lauer & Bro. another term of three years, by extending all the conditions and covenants of the first lease for said time. Their present right to the use of the alley is the same Brown would have, if in possession of the lot. This right is clear and not doubtful. There needs no action at law to determine it. Reference to the record of the judgment in favor of Lauer & Bro. against Hacke for damages, caused by obstructions in the way prior to said permissive grant, can make the right no clearer. Hacke's title to his own lot is subject to the way; but the appellants say, "For such injury the law gives a full and adequate remedy. For the relief of such injury equity has no jurisdiction."

It has long been settled that nuisances to rights of way are one of the classes of cases in which the equitable remedy by injunction may be sought. This was established in England, and accepted as a rule in this country. No case has been cited where it was denied or doubted in this state. Its existence has been recognized. The dictum is, that the right should be clear to warrant a decree and injunction to compel the keeping open of a way, and if the right be doubtful, a chancellor will pause until it be established by law: King v. McCully, 38 Pa. St. 76. In Maryland, parties are entitled to such remedy, and a defendant who has obstructed the plaintiffs' right of way over the defendants' land will be restrained from further obstructing the way: Shipley v. Caples, 17 Md. 179.

This right of way is founded upon contract, the grant being shown by the respective deeds under which Brown and Hacke hold their lots. The owner has a right to its enjoyment in the mode and form stipulated for in the deeds. The mere fact that the appellants prevent such enjoyment is sufficient ground for interference of the court by injunction. It is not necessary that the owner should prove damage to entitle him to his property.

[Union Ins. Co. *v.* City of Allegheny.]

Like rule applies as if the right existed by covenant directly between Brown and Hacke, and in such case when the coveuant is of such nature that it can, consistently with the principles of equity, be specifically enforced, the court will not, unless under very exceptional circumstances, take into consideration the comparative injury to the parties from granting or withholding the injunction: Kerr's Inj. in Eq. 430. The obstruction of a way by the owner of the land, differs widely from the maintaining of a mill or factory which is in itself lawful, but by its noise, fumes or odors, becomes a private nuisance to a person in the vicinity. In the latter case the question of irreparable damage enters, and often a court of equity will not interfere: Richards' Appeal, 57 Pa. St. 105. The doctrine of that case applies to many other kinds of business; but not where a man buys land subject to an easement, or grants an easement. He cannot appropriate such property against the owner's will and say, I will compensate him in damages. A judgment for damages does not transfer the plaintiff's property in the way, to the defendant, as would a judgment in trover or trespass for taking goods. Nor will the law restore enjoyment to the owner. He may have repeated actions for damages, and neither gain enjoyment nor lose his right thereto. The law does not offer an adequate remedy. He is entitled to a remedy that will restore him to enjoyment, and is not confined to actions at law for damages resulting from obstructions.

Decree affirmed, and appeal dismissed at the cost of appellants.